UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re Application of<br><br>OTKRITIE INTERNATIONAL INVESTMENT MANAGEMENT LIMITED, a company incorporated in the British Virgin Islands,<br><br>OTKRITIE SECURITIES LIMITED, a company incorporated in England and Wales, and<br><br>OTKRITIE FINANCIAL CORPORATION JSC, a company incorporated in the Russian Federation,<br><br>To Issue Subpoenas for the Production of Documents and Testimony for Use in a Foreign Proceeding. | Civil Action No. 13-CV- |

**APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND
TESTIMONY FOR USE IN A FOREIGN PROCEEDING**

Petitioners Otkritie International Investment Management Limited, Otkritie Securities Limited ("OSL"), and Otkritie Financial Corporation JSC (collectively, "Applicants"), by and through undersigned counsel, hereby apply pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing undersigned counsel to issue subpoenas for documents and testimony to ICAP Corporates LLC, ICAP Securities USA LLC, and any of their New Jersey-based affiliates that may have been involved in the activities that are the subject of this application (hereinafter, collectively, "ICAP US" or "Respondent") in aid of a foreign proceeding.

      1.      This Application for judicial assistance follows eight Section 1782 applications made in the Southern District of New York, all of which were granted. *See In re Application of Otkritie Int'l Invest. Mgmt. Ltd. et al. to Issue Subpoenas for the Production of Documents for*

*Use in a Foreign Proceeding* ("In re Application of Otkritie"), at DE 1, 9, 13, 14, No. 12-MC-1 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE 1, 8, No. 12-MC-118 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE 1, No. 12-MC-177 (S.D.N.Y. 2012); *In re Application of Otkritie,* at DE 1, 8, No. 12-MC-262 (S.D.N.Y 2012); *In re Application of Otkritie,* at DE 1, 5, No. 12-MC-374 (S.D.N.Y 2012); *In re Application of Otkritie*, at DE 1, 13, No. 12-MC-382 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE 1, 4, No. 13-MC-202 (S.D.N.Y. 2013).

2.      For the Court's convenience, background concerning Applicants' previous Section 1782 applications has been reproduced herein, and in the accompanying Declaration of Michael C. Miller with exhibits ("Miller Declaration"). However, to avoid inundating the Court with aspects of earlier discovery efforts beyond the scope of the present request, some facts recited in previous applications have not been repeated.

3.      Applicants are plaintiffs in a civil fraud action currently pending in the High Court of Justice, Queen's Bench Division, in the United Kingdom, captioned *Otkritie International Investment Management Ltd., et al. v. Urumov, et al.*, 2011 Folio 1182 (hereinafter, "the UK Action").

4.      In addition to the UK Action, Applicants are also plaintiffs in a number of ancillary discovery proceedings, including a discovery proceeding currently pending in the High Court of Justice, Queen's Bench Division, against ICAP Securities Ltd., captioned *Otkritie Securities Ltd. et al. v. ICAP Securities Ltd.*, 2013 Folio 322 (hereinafter, "ICAP UK" and the "ICAP UK Proceeding.").

5.      In the UK Action, Applicants assert claims against a former London-based OSL employee, Georgy Urumov ("Urumov"), Urumov's wife Yulia Balk, shell companies owned and controlled by Urumov, and other individuals and entities acting in concert with Urumov,

including, among others, former Otkritie employees Ruslan Pinaev ("Pinaev"), Sergey Kondratyuk, and Yevgueni Jemai (together, "the Co-Conspirators"), for, *inter alia*, breach of fiduciary duty, breach of contract, deceit, conspiracy, accounting, tracing, and restitution.

6. The UK Action, the ICAP UK Proceeding, and these proceedings are designed to help Applicants recoup an estimated $183 million in funds misappropriated by the Co-Conspirators.

7. In relevant part, Applicants allege in the UK Action that Urumov, Pinaev, and their cohorts were the masterminds behind a complex fraud perpetrated on OSL involving Argentinean GDP-linked subscription bonds (hereinafter, "the Argentinean Warrants" or "Warrants"). Specifically, Applicants claim that by manipulating the Argentine peso/U.S. dollar exchange rate in a series of transactions in March 2011 to which OSL was a party, and by making false representations about the existence of a riskless forward sale involving the Warrants, Urumov and Pinaev caused OSL to overpay for the Warrants by some $160 million, and diverted the overpayment to themselves and their co-conspirators (hereinafter, the "Second Argentinean Warrants Transaction" or the "Warrants Fraud").

8. Upon its review of Applicants' evidence and Urumov's defenses, the court overseeing the UK Action issued orders freezing up to $183 million in assets owned or controlled by Urumov, his wife, two of their offshore entities, and a number of additional defendants. This amount relates to both the Warrants Fraud and a separate signing bonus fraud involving Urumov, which is not the subject of this Application.

9. The primary goals of Applicants' First, Second, Third, Fourth, and Sixth Applications were to (1) trace the dissipation of misappropriated funds in support of the UK Action and Applicants' worldwide asset freezing efforts; and (2) identify institutional sources for

the Warrants used to defraud Applicants. To that end, Applicants sought primarily Society for Worldwide Interbank Financial Telecommunication ("SWIFT") transaction records (*i.e.*, interbank communications) from banks located in the Southern District of New York and suspected to have unwittingly facilitated the Warrants Fraud.

10. The Fifth Application sought from Newedge USA ("Newedge"), a brokerage headquartered in the Southern District, documents and testimony concerning a failed securities transaction that, if consummated, may have enable the Co-Conspirators to conceal their fraudulent scheme.

11. The Seventh and Eighth Applications sought from broker-dealers located in the Southern District of New York documents and testimony concerning their involvement in sourcing or accumulating the Warrants used to defraud Applicants.

12. This Application follows the same blueprint as the Seventh and Eighth Applications filed in the Southern District of New York.

13. Applicants have learned that ICAP US, based in Jersey City, was involved in acquiring hundreds of millions of the Warrants later sold to the Co-Conspirators and used in the Warrants Fraud. With this Application, Applicants seek to know more about Respondent's Warrant trading activities and its potential contacts with the Co-Conspirators or their agents.

14. In particular, Applicants seek to obtain from Respondent a schedule of all trades in the Argentinean Warrants to which it was a party from January to March 2011, all communications relating to the same, and testimony explaining, *inter alia,* the relationship between ICAP US and the Co-Conspirators or their agents. Applicants believe that such information and testimony will, at a minimum, provide evidence strengthening Applicants' case

for the Co-Conspirators' liability in the UK Action, and might reveal still unknown aiders and abettors.

15. Applicants' specific requests for documents and testimony are outlined in detail in the Subpoenas annexed as Exhibits 1 and 2 to the accompanying Miller Declaration.

16. The requirements of Section 1782 are met by Otkritie's Application. *First*, the Respondent is found in this district. ICAP Corporates LLC and ICAP Securities USA LLC are brokerages based in Jersey City, New Jersey.

17. *Second*, the discovery sought is intended for use in a "foreign proceeding," as it is calculated to support Applicants' claims in the UK Action and related discovery proceedings.

18. *Third*, as litigants in the UK Action, Applicants are "interested persons" within the meaning of § 1782.

19. Furthermore, the discretionary factors outlined by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 214, 249 (2004), support a grant of this Application.

20. Neither ICAP Corporates LLC, ICAP Securities USA LLC, nor any of their New Jersey-based affiliates that may have been involved in the trading that is the subject of this Application are participants in the UK Action or ICAP UK Proceeding, or are otherwise subject to the UK Court's jurisdiction.

21. The United Kingdom has been historically receptive to Section 1782 assistance from federal courts, and federal courts have deemed the UK courts an appropriate subject of comity and judicial assistance. *See, e.g., In re Application of Guy*, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (granting English administrators of a decedent's estate access to US discovery).

22.     This Application is brought in a good faith effort to gather intelligence regarding the Co-Conspirators' aggregation of Warrants in the buildup to the Warrants Fraud and, in so doing, to further establish Co-Conspirators' liability.

23.     Moreover, Applicants' discovery requests are narrowly-tailored to obtain probative information kept in the ordinary course of business and are not unduly intrusive or burdensome.

24.     Contemporaneous with this filing, Applicants, by their undersigned counsel, are copying General Counsel for Respondent.

25.     For reasons set forth in the accompanying papers, as in Applicants' prior applications, Applicants do not believe that notice to Urumov or other defendants in the UK Action is required. In sworn statements made by Urumov in connection with the UK Action, Urumov expressly disavows any knowledge of, or involvement in, the Warrants Fraud. Urumov maintains he was absent on medical leave when the Second Argentinean Warrants Transaction that is the subject of this Application was being consummated and knows nothing whatsoever about the reasoning behind it. Accordingly, by Urumov's own admission, Urumov does not have any vested interest in the outcome of these third-party proceedings.

26.     The defendants in the UK Action were not given prior notice of any of the eight previous Section 1782 applications. However, in accordance with UK rules, the defendants were provided with copies of all disclosure obtained. We are informed by UK counsel that the UK defendants have not quarreled with this protocol.

27.     Applicants also oppose providing notice of these proceedings to Co-Conspirators because they have a history of interfering with Applicants' recovery efforts.

28. In the UK Action, when ordered by the court to disclose the full extent of his assets, Urumov failed to identify several companies he owned or otherwise controlled, including Dunant International SA ("Dunant"), which was later discovered to have transferred funds in breach of the UK court's October 5 Freezing Order. Moreover, Urumov, failed to disclose that his wife had acquired a property in the UK, in Dunant's name, for $32 million.

29. We are also informed that Pinaev and his wife, Marija Kovarska, have fled from Switzerland to Israel where they have changed their names to Ronen and Miriam Averbuh. Pinaev refuses to return to Switzerland to face the charges against him without a "safe conduct" guarantee that he will be free to return to Israel.

WHEREFORE, for the foregoing reasons and those set out in the accompanying submission, Applicants respectfully request that this Court enter an order granting their request for discovery pursuant to 28 U.S.C. §1782 and authorizing the issuance of the subpoenas annexed as Exhibits 1 and 2 of the Miller Declaration to ICAP US.

Dated: New York, New York
September 10, 2013

Respectfully Submitted,

_____
Michael C. Miller (application *pro hac vice* to be submitted)
Evan Glassman (application *pro hac vice* to be submitted)
Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
   *Counsel for Applicants*